cc: JMS + filer

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
AUG 10 2026
at 12 o'clock and 23 min. P M
Lucy H. Carrillo, Clerk

JOHN E. ROBERT
MICHAEL J. CSERI
1100 Ainalako Road
Hilo, Hawaiʻi 96720
Telephone: (808) 333-4948
E-mail: jerobert@gmail.com
Plaintiffs Pro Se

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAIʻI**

| | |
|---|---|
| JOHN E. ROBERT and MICHAEL J. CSERI,<br>Plaintiffs,<br>vs.<br>STAR VAN LINES LLC,<br>Defendant. | CIVIL NO. CV26 00424 JMS KJM<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBIT INDEX |

## COMPLAINT

## INTRODUCTION

1. Defendant Star Van Lines LLC ("Star") contracted to move Plaintiffs' household goods from Austin, Texas to Hawaiʻi for a written estimate of $22,000. Star took possession of the goods and issued a bill of lading stating total charges of $32,525. Plaintiffs ultimately paid Star and its agents $31,899.50 — including $9,867 in wire transfers demanded on the two days surrounding delivery, as a condition of Star relinquishing the goods, after Plaintiffs had already paid more than 110 percent of Star's written estimate. When the shipment arrived, items were missing and others were damaged, causing $17,889.30 in actual loss. Star never furnished the origin inventory that federal law and Star's own written estimate required. Star has never acknowledged Plaintiffs' written claim, and — when asked directly — was unable to identify any arbitration program. Plaintiffs bring this action under the Carmack Amendment, 49 U.S.C. § 14706, and 49 U.S.C. §13707 and 14704(a)(2), and seek attorney's fees under 49 U.S.C. § 14708(d).

Received By Mail
Date 8/10/26



Mailed On
Date 8/10/26

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), because this action arises under 49 U.S.C. § 14706 and the matter in controversy under the bill of lading at issue exceeds $10,000, exclusive of interest and costs.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims occurred here: Star contracted to deliver the shipment to Hawai‘i; the shipment was delivered in Hilo, within this District; the payments demanded as a condition of delivery were demanded of and made by Plaintiffs in this District; and the loss and damage were discovered here.

4. Venue is additionally proper under 49 U.S.C. § 14706(d), which permits a civil action against a delivering carrier, and a suit against a carrier alleged to have caused the loss or damage, to be brought in the judicial district in which the loss or damage is alleged to have occurred — here, the District of Hawai‘i.

5. This Court has personal jurisdiction over Star because Star purposefully directed its activities at this forum by contracting to transport and deliver household goods to Hawai‘i, accepting payment for that delivery, and causing the shipment to be delivered in this District. Plaintiffs' claims arise directly out of those contacts.

## PARTIES

6. Plaintiff John E. Robert is a natural person residing in Hilo, County of Hawai‘i, State of Hawai‘i. He was the shipper of record on the bill of lading described below.

7. Plaintiff Michael J. Cseri is a natural person residing in Hilo, County of Hawai‘i, State of Hawai‘i. He is the spouse of Plaintiff Robert and a co-owner of the household goods comprising the shipment.

8. Defendant Star Van Lines LLC is a North Carolina limited liability company with a principal place of business at 920 US 64 Highway W, #1044, Apex, North Carolina 27523. At all relevant times, Star operated as a motor carrier of household goods in interstate commerce under U.S. Department of Transportation registration USDOT No. 4176875 and Motor Carrier No. MC-1607491.

## FACTUAL ALLEGATIONS

### A. The Contract and the Shipment

9. Plaintiffs contracted with Star directly. All arrangements were made with Star's representatives by telephone and electronic mail.

10. By electronic mail dated November 18, 2025, Star issued a written estimate, Estimate No. J6682107, for a long-distance move from Austin, Texas to Papa'aloa, Hawai'i. The estimate listed an estimated volume of 1,125 cubic feet (stated as 10,125 pounds) and a rate of $20.00 per cubic foot, for a Total Estimate of $22,000.00 — adopting, to within a fraction of a percent, the 1,124.5 cubic feet measured by the independent survey Plaintiffs had obtained. The estimate was not designated as a binding estimate. (Exhibit A.)

11. Star's written estimate expressly listed, among the services included, an "Itemized inventory indicating condition at origin." The estimate further provided that it was "binding for the specific services and items listed here within," that "any deviation of the services listed and ordered will result in a new estimate being issued," and that "a revised written visual estimate must be executed prior to any services being performed."

12. On December 19, 2025, Star took possession of Plaintiffs' household goods in Austin, Texas and issued an Interstate Bill of Lading Contract, Job No. J6682107. (Exhibit B.) Star was the receiving carrier for the shipment.

13. The household goods were jointly owned by Plaintiffs and were tendered to Star in good condition. Before the move, and independently of Star, Plaintiffs obtained a third-party property survey (Ace Relocation Systems, Inc. / Atlas Van Lines, Order No. 1777610, dated November 5–6, 2025) documenting the goods and their condition at origin (Exhibit C). That survey measured the shipment at approximately 1,124.5 cubic feet and estimated its weight by volume conversion at approximately 7,877 pounds; no article was weighed on a scale. The identity, date of purchase, and price of numerous items in the shipment are further documented by contemporaneous purchase records. (Exhibit D.)

14. The bill of lading states total charges including weight charges of $22,500 and $9,500, packing materials and labor of $1,600, and a fuel surcharge of $3,200, less discounts, yielding a stated **"GRAND TOTAL" of $32,525.00**. The bill of lading's "TOTAL ESTIMATED CHARGES" field was left blank.

15. The bill of lading's stated charges reflect a volume of 1,600 cubic feet. Both the independent survey (1,124.5 cubic feet) and Star's own written estimate (1,125 cubic feet) had fixed the volume at approximately 1,125 cubic feet; the increase to 1,600 cubic feet — 475 cubic feet, or approximately 42 percent — appeared for the first time on the bill of lading. Star never issued a revised written estimate reflecting that increase, and never executed one prior to performing services, notwithstanding the express requirement in its own estimate.

16. Plaintiffs disputed Star's charges at the outset. On December 19, 2025 — the same day Star first presented the bill of lading and took possession of the goods — Plaintiff Robert wrote on the face of that document: "WE ARE DISPUTING THIS FINAL COST." Plaintiffs never assented to the charges the bill of lading recites, and the charges have been in dispute continuously from the day of pickup. (Exhibit B.)

**B. Star's Failure to Furnish the Required Inventory**

17. Star did not prepare, and never furnished to Plaintiffs, the written itemized inventory of the shipment required of household goods motor carriers by 49 C.F.R. § 375.503 — notwithstanding that Star's own written estimate expressly listed "Itemized inventory indicating condition at origin" among the included services. Star prepared no itemized inventory identifying each carton and uncartoned item (§ 375.503(a)); afforded Plaintiffs no opportunity to observe and verify an inventory at loading (§ 375.503(b)); furnished Plaintiffs no signed inventory copy at loading (§ 375.503(c)); and, at delivery, tendered Plaintiffs no paperwork at all, afforded them no opportunity to observe, verify, or note in writing any missing or damaged articles, and provided no copy of any such notation (§ 375.503(d)). Plaintiff Robert's sworn declaration to that effect is attached as Exhibit E.

18. Plaintiffs subsequently requested the origin inventory from Star in writing. Star did not respond and produced no inventory. (Exhibit F.)

19. Star accordingly possesses no contemporaneous record — required by 49 C.F.R. § 375.503(e) to be retained and kept as an attachment made an integral part of the bill of lading contract — of what it received, of the condition of the goods at origin, or of the weight of any article, with which to contest Plaintiffs' evidence or to support the 475 cubic feet of additional volume for which it charged.

**C. Valuation**

20. Under 49 U.S.C. § 14706(f), a carrier of household goods is liable for the full value of the property unless the shipper agrees in writing to a released value in exchange for a reduced rate. Plaintiffs never signed any written waiver of full value protection, and never agreed in writing to any released value or limitation of Star's liability.

21. Star's written estimate listed "Basic Valuation Protection: $0.60 per lbs. per article" at a price of $0.00, and listed "FULL VALUATION" as an unpriced optional accessorial service. On the bill of lading, the checkbox for "FULL VALUATION" under "OPTIONAL ACCESSORIAL SERVICES ORDERED" is not checked, and the document recites "Valuation at $0.60 per pound per item — INCLUDED FREE." Because the $0.60-per-pound level carried no reduced rate and full value protection carried no stated price, Plaintiffs were offered no genuine choice between two levels of liability and gave up nothing in exchange for any purported limitation.

22. Star first presented the bill of lading to Plaintiffs at pickup on December 19, 2025, at the time of loading, and not before the move.

23. The bill of lading records no weight for the shipment or for any article in it. Its "WEIGHT CHARGES" fields state quantities of 1,125 and 475 at a rate of $20 — figures identical to the cubic-foot volume and per-cubic-foot rate stated in Star's estimate. Star never weighed the shipment on a certified scale, never obtained weight tickets, and never provided a written volume-to-weight conversion explanation, as 49 C.F.R. §§ 375.507 and 375.519 require of a carrier transporting under a non-binding estimate dependent on weight. Because Star also never prepared the inventory required by 49 C.F.R. § 375.503, no record exists of the identity, condition, or weight of any article Star received.

**D. Plaintiffs' Payments to Star**

24. Plaintiffs paid Star and its agents a total of $31,899.50, as follows:

| Date | Method | Amount | Running Total |
|---|---|---|---|
| Nov. 18, 2025 | Credit card | $7,700.00 | $7,700.00 |
| Dec. 22, 2025 | Bank transfer | $14,332.50 | $22,032.50 |
| Apr. 29, 2026 | Domestic wire transfer | $4,367.00 | $26,399.50 |
| Apr. 30, 2026 | Domestic wire transfer | $1,775.00 | $28,174.50 |
| Apr. 30, 2026 | Domestic wire transfer | $3,725.00 | **$31,899.50** |

25. Star's bill of lading provides that the "[m]aximum amount to be paid to Star Van Lines, LLC and demanded at destination is the amount of the last issued non-binding estimate plus 10%," with "any remaining balances due" to "be billed after 30 days of delivery." One hundred ten percent of Star's November 18, 2025 estimate is $24,200.00.

26. By December 22, 2025 — three days after Star took possession of the goods — Plaintiffs had already paid Star $22,032.50, nearly the entire $24,200.00 maximum Star could lawfully demand at delivery, four months before delivery occurred.

27. Star demanded and collected the three wire transfers of April 29 and 30, 2026 — totaling $9,867.00 — at a time when Plaintiffs had already paid $22,032.50; the wires drove Plaintiffs' total payments to $31,899.50, far above the $24,200.00 that was the most Star was entitled to demand at delivery under its own bill of lading.

28. Notwithstanding the foregoing, the bill of lading in Plaintiffs' possession bears a handwritten notation asserting a "NEW BALANCE DUE IN 30 DAYS" of $20,475.00. Star has never itemized, documented, or explained that asserted balance.

**E. The Charges Demanded as a Condition of Delivery**

29. Star's bill of lading states, in capital letters: "PAYMENT IN FULL OF TOTAL CHARGES IS REQUIRED BEFORE THE DELIVERY TRUCK IS OPENED AND BEFORE UNLOADING."

30. On April 29 and April 30, 2026, as a condition of relinquishing the shipment for delivery, Star and its agents demanded that Plaintiffs pay $9,867.00 in additional charges by wire transfer. No itemization or documentation of those charges was provided. Star and its agents would accept payment by wire transfer only, and refused all other forms of payment — including the forms of payment Star's own bill of lading specifies for payment at delivery.

31. The sequence was: Star demanded the additional charges; Star withheld Plaintiffs' household goods pending payment, pursuant to the bill of lading's term requiring "payment in full" before the truck could be opened and before unloading; Plaintiffs paid; and only then did Star release and deliver the goods. Because Star conditioned the release of Plaintiffs' household goods — already in Star's exclusive possession, four months into the carriage, and thousands of miles from their origin — on those payments, and because Plaintiffs had no other lawful means of obtaining their own property, the payments were made under economic duress and not voluntarily. Plaintiffs had disputed Star's charges in writing on the face of the bill of lading since the day of pickup, and never assented to them at any point. (Exhibits B, G.)

32. All three wire transfers were demanded and paid after Plaintiffs had already paid more than 110 percent of Star's only written estimate — the ceiling Star's own bill of lading recites as the maximum it could demand at delivery.

33. The beneficiary named on Plaintiffs' wire transfer receipts is "Uship vanlines" — not Star Van Lines LLC. Plaintiffs were given more than one account number across the transfers. (Exhibit P.) "Uship vanlines" appears to correspond to Uship Van Lines, Inc. (Des Plaines, IL; USDOT 3787136; MC 1357885). Star disclosed in the bill of lading that it "may use agents/independent sub-contractors on all orders," and Star is responsible for charges demanded and collected on its behalf as a condition of delivery under its own contract. Plaintiffs elect to proceed solely against Star Van Lines LLC as the receiving carrier under 49 U.S.C. § 14706(a)(1), which permits recovery without joining downstream carriers. To the extent Star contends that any subcontractor or agent — including Uship Van Lines, Inc., the entity corresponding to the "Uship vanlines" wire-transfer beneficiary — is responsible for the loss, damage, or improper charges, Star may seek indemnity or contribution through impleader under

Fed. R. Civ. P. 14(a). Joinder of additional carriers is therefore discretionary rather than necessary for adjudication of Plaintiffs' Carmack claim.

34. No representative of Star or of any subcontractor identified himself or herself, or the entity he or she represented, at delivery.

**F. The Incomplete and Damaged Delivery**

35. On April 30, 2026, Star delivered the shipment in Hilo, Hawaiʻi. The delivery was incomplete, and a substantial portion of the goods delivered were damaged. Numerous items were never delivered at all.

36. Plaintiffs were presented with no paperwork of any kind at delivery. No inventory, delivery receipt, condition report, or exception form was tendered to Plaintiffs; Plaintiffs were given no opportunity to observe and verify that the same articles were being delivered or to note in writing any missing, damaged, or destroyed articles; and Plaintiffs were furnished no copy of any such notation — each a requirement of 49 C.F.R. § 375.503(d). Star accordingly holds no document in which Plaintiffs acknowledged receipt of the shipment or accepted it as complete or undamaged.

37. Plaintiffs' actual loss from the missing and damaged goods is $17,889.30, itemized at Exhibit H and documented by seventy three (73) keyed photographs taken after delivery (Exhibit I), by contemporaneous purchase records establishing the identity, purchase date, and price of numerous missing items (Exhibit D).

38. Because the shipment was delivered to Hawaiʻi, Plaintiffs must replace the missing and destroyed goods at Hawaiʻi destination prices, which materially exceed prices on the United States mainland. The actual-loss values stated in Exhibit H reflect the reasonable cost of replacing the goods at their destination on the Island of Hawaiʻi, and incorporate a destination cost differential of approximately thirty percent over mainland prices, consistent with the

documented cost-of-goods premium in Hawaiʻi. That premium arises from Hawaiʻi's dependence on ocean freight for nearly all consumer goods, the additional neighbor-island transportation leg required to reach the Island of Hawaiʻi, and Hawaiʻi's consistently documented status as among the highest cost-of-living jurisdictions in the United States.

**G. Plaintiffs' Claim and Star's Non-Response**

39. On May 1, 2026 — the day after delivery — Plaintiff Robert notified Star's representative Justin (justin@starvanlinesmovers.com), the same representative who had issued Star's written estimate, by electronic mail (subject "Job #J6682107") that upon delivery some items were missing and some were damaged. Plaintiff Robert requested Star's claim form and written claim procedure, stated that he was documenting the loss with photographs and records and that the list was preliminary and would be supplemented, and asked Star to confirm receipt. Star neither provided any claim form or procedure, nor confirmed receipt, nor otherwise responded. (Exhibit Q.)

40. On May 5, 2026 — five days after delivery — Plaintiff Robert filed Complaint No. 00277047 with the Federal Motor Carrier Safety Administration's National Consumer Complaint Database. By letter dated May 18, 2026, FMCSA acknowledged the complaint, appended it to Star's carrier record, and referred Plaintiff Robert to civil remedies. (Exhibit J.)

41. On May 18, 2026, Plaintiff Robert submitted to Star, by certified mail, a written claim complying with 49 C.F.R. Part 370: it identified the shipment, asserted Star's liability, and demanded payment of a specified amount. Star received the claim, as reflected by the certified mail return receipt. (Exhibit K.)

42. On June 29, 2026, MovingClaims.net — which Star describes as its "official claims representative" and "designated third-party claims processing administrator," handling claims

"on our behalf" — sent Plaintiff Robert an electronic mail message under the subject line "Response to Your Claim Request." Attached to that message was a single PDF file named "John Robert claim letter.pdf": Plaintiff Robert's own claim letter of May 18, 2026. Plaintiff Robert had never sent that letter, or any other document, to MovingClaims.net, and had no correspondence with it of any kind. Star Van Lines was the only party to whom Plaintiff Robert had sent the letter, and the only party in a position to furnish it to MovingClaims.net. (Exhibit M.)

43. The body of the June 29, 2026 message named no carrier, made no reference to Star Van Lines, and made no reference to Job No. J6682107. It directed Plaintiff Robert to register a claim on a website, and stated that acknowledgment would follow only after such registration: "Once we receive your information online, we will promptly send you a Claim Acknowledgment Confirmation Notice." It further stated that "any items or concerns not included in your initial claim will not be addressed, responded to, or added at a later stage."

44. Star thus had Plaintiff Robert's written claim in hand and furnished it to its own claims administrator, which transmitted it back to Plaintiff Robert under a subject line characterizing the message as a response to his claim. Neither Star nor its administrator ever acknowledged the claim in writing within thirty days of receipt, as 49 C.F.R. § 370.5 requires. As of the filing of this Complaint — approximately ninety days after receipt — Star has not acknowledged the claim, requested documentation, made an offer, or denied it.

45. Plaintiffs also sent follow-up correspondence itemizing their damages to Star by electronic mail. Star did not respond. (Exhibit L.)

46. In July 2026, Plaintiff Robert filed a consumer complaint with the North Carolina Department of Justice, Consumer Protection Division (File No. 2026-182448). By letter dated

July 15, 2026, Star responded to that office, asserting that Plaintiff Robert "did not contact Star Van Lines LLC directly to report any concerns or request a resolution prior to filing this complaint," and that Plaintiff Robert "did not initiate a formal claim or complaint through" its administrator. Both assertions were false, and were contradicted by Star's own records: Star had received Plaintiff Robert's certified written claim on or about May 18, 2026; Star had furnished that same claim letter to its own claims administrator, which transmitted it back to Plaintiff Robert sixteen days before Star's letter, under the subject line "Response to Your Claim Request"; Plaintiff Robert had, the day after delivery, e-mailed Star's own representative to report the loss and to request Star's claim form and procedure, which Star never provided; and Plaintiff Robert's federal complaint had been appended to Star's FMCSA carrier record since May 2026. (Exhibits Q, K, M, N.)

47. In the same July 15, 2026 letter, Star asserted that its "shipping documents and customer materials" instruct customers to submit claims through MovingClaims.net. The bill of lading Star issued to Plaintiffs identifies no such portal, administrator, or procedure; it states only that claims "must be made in writing." Star simultaneously professed to that office its willingness to respond to a claim "within the timeframes required under applicable law," while already in violation of the thirty-day acknowledgment requirement of 49 C.F.R. § 370.5 as to the claim it had held, unacknowledged, since May 18, 2026.

48. By letter dated July 16, 2026, the North Carolina Department of Justice closed its file, stating that disputes of this kind "are private legal matters that can only be resolved by the courts." (Exhibit N.)

49. On July 17, 2026, Plaintiff Robert demanded in writing, by electronic mail and by certified mail, that Star (i) identify the arbitration program in which it participates for the settlement of

household goods disputes, (ii) produce that program's rules and procedures, (iii) produce any arbitration disclosure Star contends was furnished to Plaintiffs, and (iv) confirm that this dispute had been submitted to that program. (Exhibit O.)

50. Star responded by electronic mail on July 17, 2026 Star identified no arbitration program. Star produced no rules or procedures. Star produced no arbitration disclosure. Star confirmed no submission. Star instead directed Plaintiff Robert to MovingClaims.net — the same claims administrator it describes as handling claims "on our behalf" — and attached to its response Plaintiff Robert's own claim letter of May 18, 2026. (Exhibit O.)

51. Star did not advise Plaintiffs of the availability, terms, or procedures of any dispute settlement program in the manner required by 49 U.S.C. § 14708(b). Although the bill of lading's pre-printed signature block recites receipt of "arbitration information," no arbitration program materials, provider identity, rules, or procedures were furnished to Plaintiffs at any time; and Star was unable or unwilling to identify any such program when asked directly. A claims administrator engaged by and acting on behalf of the carrier is not a dispute settlement program within the meaning of 49 U.S.C. § 14708.

52. The pre-printed recital on Star's bill of lading purporting to acknowledge receipt of "arbitration information" does not satisfy 49 U.S.C. § 14708(b). Section 14708(b) requires the carrier to advise the shipper of the availability of a dispute settlement program and to furnish a concise, easy-to-read statement identifying the program, its rules, and the procedures for initiating arbitration. Star furnished no such materials at any time, and the bill of lading's boilerplate signature block does not meet the statute's content requirements.

53. Star's written response of July 2026 — identifying no arbitration program, producing no rules or procedures, and confirming no submission — constitutes a failure to notify Plaintiffs of

the availability of any dispute settlement program and a failure to participate in such a program within the meaning of 49 U.S.C. § 14708(d). This independent statutory predicate was satisfied prior to the filing of this action.

54. Because Star did not identify any dispute settlement program when directly asked, Plaintiffs are not required to await the expiration of any decision period applicable only to properly submitted arbitration demands. Filing this action before August 28, 2026 is therefore consistent with 49 U.S.C. § 14708(d).

55. MovingClaims.net is a claims administrator engaged by and acting on behalf of Star, and is not a neutral dispute settlement program of the kind 49 U.S.C. § 14708 contemplates. It provides no arbitration rules, no consumer-facing arbitration procedures, and no mechanism for binding dispute resolution. Star's direction to MovingClaims.net therefore does not constitute participation in, or notice of, any dispute settlement program under § 14708.

56. This action is commenced within 120 days of the April 30, 2026 delivery.

## COUNT I

### Liability Under the Carmack Amendment, 49 U.S.C. § 14706

57. Plaintiffs reallege and incorporate by reference paragraphs 1 through 56 above.

58. Star received Plaintiffs' household goods for transportation in interstate commerce and issued a bill of lading for the shipment. As the receiving carrier, Star is liable under 49 U.S.C. § 14706(a)(1) for the actual loss or injury to the property caused by it or by any other carrier over whose line or route the property was transported.

59. A shipper establishes a prima facie case under the Carmack Amendment by showing (a) delivery of the goods to the carrier in good condition, (b) arrival in damaged condition or non-arrival, and (c) the amount of damages. *Missouri Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S.

134, 138 (1964); see also *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415–16 (7th Cir. 1987). Each element is satisfied here: condition at tender is established by the pre-move property survey (Exhibit C) and contemporaneous purchase records (Exhibit D); non-arrival and damage are established by the itemized inventory (Exhibit H) and photographs (Exhibit I); and the amount is $17,889.30.

60. The burden accordingly shifts to Star to prove both that it was free from negligence and that the loss was caused by an excepted cause. Star cannot carry that burden: having never prepared or furnished the itemized inventory required by 49 C.F.R. § 375.503, Star has no contemporaneous record with which to contest the condition or contents of the shipment at tender. Star should not benefit from an evidentiary void of its own creation, produced by its violation of a regulation designed to prevent precisely this dispute.

61. Plaintiffs have satisfied all conditions precedent to suit, including the filing of a timely written claim under 49 C.F.R. Part 370, which Star received, routed to its own claims administrator, and has never acknowledged.

62. The measure of Plaintiffs' actual loss is the cost of replacing the missing and destroyed goods at their Hawai'i destination, as pleaded above. As a direct and proximate result of Star's failure to deliver Plaintiffs' goods in the condition received, Plaintiffs suffered actual loss of $17,889.30.

## COUNT II

### Recovery of Overcharges Collected as a Condition of Delivery, 49 U.S.C. §§ 13707, 14704(a)(2); Restitution in the Alternative

63. Plaintiffs reallege and incorporate by reference paragraphs 1 through 62 above.

64. 49 U.S.C. § 13707 governs the payment a carrier of household goods may require as a condition of relinquishing possession of a shipment, and limits that amount by reference to the carrier's estimate, with disputed additional charges to be resolved after delivery rather than extracted before it. Star's own bill of lading recites that limit.

65. Star, directly and through its agents, refused to relinquish Plaintiffs' household goods except upon payment of $9,867.00 in additional, unitemized, undocumented charges, demanded by wire transfer only, at a time when Plaintiffs had already paid Star more than 110 percent of its last written estimate.

66. Star further failed to prepare or execute a revised written estimate before performing services, notwithstanding a 42 percent increase in the volume charged and the express requirement to do so in Star's own written estimate, and failed to prepare the inventory that would have documented the shipment actually tendered.

67. Under 49 U.S.C. § 14704(a)(2), a carrier is liable for damages sustained by a person as a result of an act or omission of the carrier in violation of Part B of Subtitle IV of Title 49. Plaintiffs are entitled to recover the overcharges Star collected in violation of § 13707.

68. In the alternative, and to the extent any portion of the $9,867.00 is not recoverable as a statutory overcharge, Star holds that sum as money had and received, obtained under economic duress and without consideration, and is liable to Plaintiffs in restitution.

69. The payments were not voluntary. They were extracted while Plaintiffs' household goods were held in Star's exclusive possession, under Star's own term requiring payment in full before the goods could be released, and were made under written protest. A payment made to recover one's own property from a carrier's possession is not a voluntary payment.

70. Plaintiffs were damaged in the amount of **$9,867.00**, representing the full sum Star demanded and collected as a condition of delivery in violation of 49 U.S.C. § 13707. In the alternative, and to the extent the Court determines that only a portion of that amount constitutes a recoverable overcharge, Plaintiffs seek $7,699.50, being the amount paid in excess of 110 percent of Star's last written estimate; or $9,899.50, being the amount paid in excess of that estimate; or such amount as may be proven at trial.

## COUNT III

### Attorney's Fees Under 49 U.S.C. § 14708(d)

71. Plaintiffs reallege and incorporate by reference paragraphs 1 through 70 above.

72. This is a court action to resolve a dispute between shippers of household goods and a carrier providing transportation of household goods, within the scope of 49 U.S.C. § 14708.

73. Plaintiffs are entitled, upon prevailing, to a mandatory award of reasonable attorney's fees under 49 U.S.C. § 14708(d) for any period during which Plaintiffs are represented by counsel, because: (a) Star did not advise Plaintiffs of the availability, terms, or procedures of any arbitration program in the manner required by 49 U.S.C. § 14708(b), the bill of lading's pre-printed recital notwithstanding, and identified no such program when demanded to do so; and, in the alternative, (b) Plaintiffs demanded in writing that the dispute be submitted to Star's arbitration program and no decision has been rendered within the period the statute allows; and (c) this action is brought within 120 days of delivery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant Star Van Lines LLC as follows:

A. On Count I, actual damages of $17,8898.30;

B. On Count II, damages of $9,867.00, or such other amount as may be proven at trial;

C. Prejudgment and post-judgment interest as allowed by law;

D. Costs of suit;

E. Reasonable attorney's fees pursuant to 49 U.S.C. § 14708(d); and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

DATED: Hilo, Hawai'i, AUGUST 7TH, 2026.

[signature]

JOHN ROBERT, Plaintiff Pro Se

[signature]

MICHAEL J. CSERI, Plaintiff

## EXHIBIT INDEX

Exhibit A — Star Van Lines LLC written estimate
Exhibit B — Interstate Bill of Lading Contract, Job No. J6682107
Exhibit C — Independent third-party property survey
Exhibit D — Contemporaneous purchase records for missing items
Exhibit E — Declaration of John Robert re: absence of 49 C.F.R. § 375.503 inventory
Exhibit F — Written request to Star for origin inventory
Exhibit G — Proof of Payments
Exhibit H — Itemized inventory of missing and damaged goods
Exhibit I — Keyed photographs
Exhibit J — FMCSA NCCDB and FMCSA response
Exhibit K — Claim letters and Certified mail return receipt
Exhibit L — Follow-up electronic correspondence to Star Van Lines

Exhibit M — MovingClaims.net electronic mail
Exhibit N — NC DOJ File No. 2026-182448; Star Van Lines response; NC DOJ closure letter,
Exhibit O— Demand for arbitration, Proof of certified mailing, Star Van Lines' electronic mail response
Exhibit P — Text messages showing multiple beneficiary account numbers
Exhibit Q — First notice of loss and damage: Plaintiff Robert's e-mail to Star's representative, May 1, 2026